Stoudt *v.* Phila. R. T. Co., Appellant.

Argued October 18, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Charles J. Biddle,* and with him *John J. K. Caskie,* for appellant.

*S. R. Schatz,* for appellee.

Opinion by Gawthrop, J., December 12, 1929:

This was an action of trespass for damages resulting to plaintiff's automobile from a crossing accident on Fifty-second Street, Philadelphia. The negligence charged against the defendant was excessive speed of its car and failure to control it properly. Fifty-second Street is a wide street, something like Market Street, running north and south and in the center the defendant has a double line of car tracks, that to the west being southbound and that to the east being northbound. Poplar Street, which is from twenty to twenty-five feet wide from curb to curb, runs into Fifty-second Street from the west, but does not cross it. Plaintiff's unsupported testimony was to the effect that about dusk on November 26, 1924, she was driving her Oldsmobile sedan north on Fifty-second Street, intending to turn west into Poplar Street. She stopped her car close to the east curb of Fifty-second Street, opposite the entrance to Poplar Street, in order to let another automobile, which was back of her, pass on her left. While standing there she saw the defendant's southbound Fifty-second Street car standing at the intersection of Girard Avenue, which is a short square to the north, unloading and taking on passengers. There were no automobiles or trolley cars between her and the car above mentioned, except the automobile which had just passed her. In the space between the northbound car track and the curb there is room for two automobiles to pass. Plaintiff testified that at the time she started to make the turn from the east curb of Fifty-second Street she saw the car at Girard Avenue. Q. "Did you see the trolley car after that time? A. I saw it coming down, I saw I had plenty of time, and then the first thing I saw it hit me on the rear end, the middle of the rear. Q. At what rate of speed was the trolley car going down Fifty-second Street? A. At very high speed, because if it slowed down I

had plenty of time to pass without it hitting me. On cross-examination she said: ''I saw the car the whole time coming down, because I had plenty of time. As I said before, he seemed to speed up on me and hit me on the rear.'' Q. You saw he was coming pretty fast all the time? A. He seemed to pick up more speed in the middle of the block. That is how it looked to me. Q. How fast were you going, five miles an hour? A. Five or six miles an hour, I don't believe in turning fast. Q. When you say you watched this southbound car approaching all the time, when you got to the track how far away was the street car? When you got to the southbound track how far away was the street car? A. It was just coming over Girard Avenue. Q. Do you mean to say when you went on the track that the car was up at Girard Avenue? A. When I made the turn it started. Q. When you got on the track, when you reached the southbound track, how far away was the trolley? A. I couldn't exactly tell you, I knew that I would have had plenty of time if the motorman had worked his brakes right. Q. You say it was going fast? A. He picked up speed like in the middle. Q. When you got to the track you saw this motorman was coming pretty fast, on the southbound track? A. Yes. Q. You saw he was coming fast? A. He was coming down and I was crossing. Q. You think you would have gotten across if he hadn't been going so fast? A. Absolutely, I would, and if he knew how to use the brakes this wouldn't have happened. Q. When you went on the track the man was going so fast he didn't give you time to get off? A. Yes, he hit me in the rear like. The witnesses for the defendant consisted of the motorman, conductor and two disinterested passengers on the car. The motorman and conductor testified that the trolley car had made a safety stop just short of Poplar Street, that is, the speed was reduced to about five miles an hour, and that when

the trolley car was in the middle of Poplar Street plaintiff's automobile suddenly turned from behind another car and was within ten or twenty feet of the trolley car when it ran directly in front of it. One of the passengers testified that he was sitting in the front of the trolley car and saw plaintiff's car turn "very short right in front of the motorman ...... about ten feet when it turned to go across." All four of defendant's witnesses testified, as did the plaintiff also, that when the trolley car stopped its front end was about even with the south curb line of Poplar Street. The trial resulted in a verdict for the plaintiff and from the judgment entered thereon the defendant brings this appeal.

Two of the assignments of error complain of the refusal of defendant's point for binding instructions and its motion for judgment non obstante veredicto. In view of the conclusion which we have reached the other assignments need not be considered. Giving the plaintiff the benefit of every fact and inference of fact tending to support the verdict, the evidence not only fails to establish defendant's negligence, but also fails to present a case clear from contributory negligence. The plaintiff's statements that the car was going "fast" and "at very high speed" is not evidence of excessive speed. She produced no evidence as to the actual rate of speed at which the car was running and, therefore, furnished no proof to guide the jury in considering whether the defendant was negligent in this regard. As stated in Yingst v. Lebanon & Annville St. Ry. Co., 167 Pa. 438, electric cars may maintain a fair rate of speed and it is not possible to establish an allegation of negligence in respect of speed without testimony showing a standard, and further showing a breach of the standard, and no jury would have liberty to deal with such a question unless there is practical evidence in the case upon these subjects. That rule was followed

in Wolf v. Phila. Rapid Transit Co., 252 Pa. 448, in which the plaintiff testified that the car was running "extra fast." The suggestion that the car was running at an excessive speed is rebutted by the fact that it stopped within half the width of Poplar Street after the collision, or within a space of twelve or thirteen feet: Wolf v. Phila. Rapid Transit Co., supra; Schuchalter v. Phila. Rapid Transit Co., 288 Pa. 189.

Was there any evidence to support the allegation that the motorman failed to control the car properly when he saw or should have seen that the plaintiff's automobile was on the track, or was committed to the crossing, a sufficient distance in front of the car to have given him a reasonable chance to avoid the collision? Herein we think the plaintiff's proof failed again, because she produced no evidence of the distance between the automobile and the street car at the time the former reached the southbound track. When she was asked how far away was the trolley when she got on the track, she said: "I couldn't exactly tell you." She expressed no opinion as to the distance. How then can it be held that her testimony supports a finding of fact that when she reached the southbound track the distance between her automobile and the trolley car was sufficient to enable the motorman to avoid the collision? It is true that at one place in her testimony she said that when she got to the southbound track the trolley car was just coming over Girard Avenue, but when that statement was followed immediately by the question, "Did you mean to say when you went on the track that the car was up at Girard Avenue?" she answered, "When I made the turn it started." This answer was followed immediately by her statement that she could not tell how far the trolley car was from her when she reached the southbound track. There is, therefore, no substantial conflict in her testimony or the inferences to be drawn therefrom. It fol-

lows that we must apply the rule that where the facts are simple and the evidence by which they are presented is involved in no uncertainty, their legal value is for the court to determine: Wolf v. Phila. Rapid Transit Co., supra. Our conclusion is that the proof of defendant's negligence wholly failed.

We are also convinced that the plaintiff's evidence convicts her of contributory negligence. Her positive testimony is that just as she started her car from the east curb of Fifty-second Street the street car started from Girard Avenue, which her counsel concedes is approximately one hundred and fifty feet north of Poplar Street, and that, although the street car "picked up speed" immediately after starting and she saw it "pick up more speed in the middle of the block," and that it was moving "at very high speed," she drove on at a speed of five or six miles an hour and undertook to make the crossing in front of a rapidly moving car when she could not estimate its distance from her and was struck before she could clear the track. As her automobile was struck at the rear end she must have travelled the length thereof plus the width of the car or less than twenty feet from the time she reached the track until the collision. If she was travelling at six miles an hour and the street car was travelling at thirty miles an hour, or five times as fast (which is highly improbable in view of the fact it stopped within thirteen feet of the point of collision), the latter must have been within one hundred feet of her when she entered the track, or the accident would not have happened. If she had testified that she drove at six miles an hour in front of a car which was one hundred feet away when she saw it travelling rapidly, her contributory negligence would be clear. The dominant right to the track was in the defendant. In order to justify her effort to make the crossing ahead of the street car, it was the plaintiff's duty to establish facts which war-

rant the inference that she was so far in advance of the street car that it would appear to a reasonably prudent person that she had a reasonable time to clear the crossing and probably avoid a collision. In this we think she failed. In the light of the undisputed facts it was not sufficient for her to testify that she did not know how far the street car was from her when she undertook to make the crossing, but that she thought she had time enough. If this was sufficient then any person who is struck by a steam or street car at a grade crossing can avoid the imputation of contributory negligence by expressing the opinion that the car was far enough away to permit him to cross in safety, instead of presenting evidence of facts from which the question of his contributory negligence is to be determined. The plaintiff seems to have had some doubt in her own mind about the propriety of attempting to clear the crossing, because when she was asked how far away was the street car when she was at the track, she said that she knew she would have "plenty of time if the motorman had worked his brakes right." It is negligence to attempt to cross a street car track upon which a car is approaching when to do so appears hazardous. Where one voluntarily subjects himself to manifest danger he cannot complain, because others fail to exercise care so as to save him from harm: Kilpatrick v. Phila. R. T. Co., 290 Pa. 288. The speed of the car which she testified was obvious to her, and its proximity to her which is demonstrated by mathematical calculation based upon by undisputed facts should have caused her to exercise that degree of prudence which would have avoided the unfortunate collision. The only reasonable inference from her testimony and the undisputed facts is that she took a chance of getting over ahead of a street car and thereby assumed the risk of an obvious danger which she expected the motorman to avert by slackening the speed of the

car. The defendant was entitled to the nonsuit for which it moved and its point for binding instructions should have been affirmed.

The judgment is reversed and judgment is here entered for the defendant.